[Civ. No. 67806. Second Dist., Div. Seven. Mar. 29, 1984.]

NO OIL, INC., et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

Tuttle & Taylor, Raymond C. Fisher, John J. Stick, Wayne Stephen Braveman, Carlyle W. Hall, Jr., and Fredric D. Woocher for Plaintiffs and Appellants.

Ira Reiner, City Attorney, Gary P. Netzer, Assistant City Attorney, Julie P. Downey, Deputy City Attorney, Hanna & Morton, J. Nile Kinney and Edward S. Renwick for Defendants and Respondents.

OPINION

THOMPSON, J.—The issue presented by this appeal is whether the trial court properly granted the motion of defendants, City of Los Angeles (City), and Occidental Petroleum Corporation (Occidental), to dismiss all further proceedings in the case pursuant to the three-year rule of Code of Civil Procedure[1] section 583, subdivision (c), and thus foreclose the plaintiffs from resetting their motion for attorneys' fees pursuant to the provisions of section 1021.5. For reasons to follow, we have concluded that the trial court's decision granting defendants' dismissal motion should be reversed.

*Facts*

On October 27, 1972, the plaintiffs filed their petition and complaint challenging the failure of the City to prepare an environmental impact report (EIR) under the California Environmental Quality Act (CEQA) prior to the enactment of certain ordinances establishing oil drilling districts in Pacific Palisades, and seeking a writ of mandate to declare the ordinances invalid. The complaint contained a prayer for attorneys' fees.

Following a court trial, the trial court, on January 15, 1973, entered judgment in favor of defendants. Plaintiffs appealed and, eventually, on December 10, 1974, the California Supreme Court rendered its decision in *No Oil, Inc.* v. *City of Los Angeles,* 13 Cal.3d 68 [118 Cal.Rptr. 34, 529 P.2d 66] (hereafter *No Oil I*). In *No Oil I,* the Supreme Court reversed the trial court, and remanded the case with direction to the trial court to "set aside the ordinances establishing the oil drilling districts on the ground that the city, in enacting these ordinances, failed to comply with the provisions of CEQA." (*Id.,* at p. 88.)

Prior to the issuance of the remittitur in *No Oil I,* plaintiffs made a motion before the Supreme Court for an award of reasonable attorneys' fees in connection with the appeal. On February 13, 1975, in *No Oil, Inc.* v. *City of Los Angeles,* 13 Cal.3d 486 [119 Cal.Rptr. 216, 531 P.2d 784] (hereafter *No Oil II*), the Supreme Court denied plaintiffs' motion for attorneys' fees

---

[1]Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

without prejudice to its renewal before the trial court. The court further ordered: "If plaintiffs present their motion to the trial court, accompanied by an appropriate showing of time and effort expended, the trial court is directed to determine that motion, and if it concludes that plaintiffs are entitled to a reasonable attorneys fee for services performed on appeal, to fix the amount thereof." (*Id.*, at p. 487.) The court directed the clerk to incorporate its orders in *No Oil II* in the remittitur to be issued in *No Oil I.* (*Ibid.*)

The remittitur was filed in the superior court on March 7, 1975. Thereafter, on March 21, 1975, the trial court, in accordance with the directions of the Supreme Court in *No Oil I,* issued a writ of mandate directing that the oil drilling ordinances be set aside.

On April 3, 1975, plaintiffs filed a motion in the trial court for award of attorneys' fees for the successful prosecution of the case. The hearing on this motion was scheduled for May 9, 1975. However, on May 7, 1975, the parties stipulated in writing to take the motion off calendar in order "to provide all parties with an opportunity to take discovery in this matter. . . ." The parties further stipulated that "a new hearing date will be set by stipulation among the parties when such discovery is completed."

Thereafter, based on the plaintiffs' refusal to comply with Occidental's request for production of documents, Occidental filed a motion to compel compliance. On September 15, 1975, the trial court denied Occidental's motion. Occidental then sought a writ of mandate in the Court of Appeal to challenge the trial court's denial of its discovery motion. Its petition was denied on November 7, 1975.

The 1977 Legislature enacted section 1021.5,[2] which became effective on January 1, 1978.

On May 21, 1982, plaintiffs wrote to Occidental requesting certain discovery in connection with the matter of attorneys' fees. In response, on June 16, 1982, Occidental filed a motion to dismiss all further proceedings

---

[2]Section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

in the case on the bases of section 583, subdivision (c), and laches. Later, the City filed a similar motion based on the same grounds.

On August 18, 1982, the trial court granted the motion of both Occidental and the City to dismiss "all further proceedings" in the case. The trial court relied solely on section 583, subdivision (c). The court reasoned that, once the remittitur was filed, the plaintiffs had only three years under section 583, subdivision (c), to bring the issue of attorney's fees to trial, since the reversal in *No Oil* not only empowered the trial court to invalidate the ordinances establishing the oil drilling districts but also empowered it to determine any unresolved issue, including attorney's fees.

Plaintiffs appeal from the order of dismissal, claiming the trial court erred in applying section 583, subdivision (c), to dismiss all further proceedings in the case and, thereby foreclose the plaintiffs from resetting a postjudgment motion for attorney's fees pursuant to section 1021.5.

### Discussion

Plaintiffs contend that the reversal in *No Oil I* did not call for a new trial and, hence, section 583, subdivision (c), is inapplicable.

Section 583, subdivision (c), provides in pertinent part: ". . . When, in an action after judgment, an appeal has been taken and judgment reversed with cause remanded for a new trial . . . the action must be dismissed by the trial court, on motion of defendant after due notice to plaintiff, or of its own motion, unless brought to trial within three years from the date upon which remittitur is filed by the clerk of the trial court. Nothing in this subdivision shall require the dismissal of an action prior to the expiration of the five-year period prescribed by subdivision (b)."

This provision, therefore, expressly applies only to a new trial of an action in which judgment has been entered and an appeal taken with reversal and remand for a new trial. (*Muller* v. *Muller* (1960) 179 Cal.App.2d 815, 819 [4 Cal.Rptr. 419].)

Moreover, the statutory aim of section 583 is to "promote the trial of cases before evidence is lost, destroyed, or the memory of witnesses becomes dimmed . . . [and to] protect defendants from being subjected to the annoyance of an unmeritorious action remaining undecided for an indefinite period of time." (*General Motors Corp.* v. *Superior Court* (1966) 65 Cal.2d 88, 91 [52 Cal.Rptr. 460, 416 P.2d 492].) Hence, in the situation where there is an unqualified reversal without directions, the effect is to remand the case for a new trial on the merits. (*McDonough Power*

*Equipment Co.* v. *Superior Court* (1972) 8 Cal.3d 527, 532 [105 Cal.Rptr. 330, 503 P.2d 1338]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 543, p. 4484.) Under such circumstances, "the action must be brought to trial within three years from the filing of the remittitur in the trial court." (*McDonough, supra,* 8 Cal.3d at p. 532.)[3] However, "judgment reversed" does not call for a retrial when it is clear the appellate court's intent was otherwise. (*Stromer* v. *Browning* (1968) 268 Cal.App.2d 513, 518 [74 Cal.Rptr. 155].) Moreover, a retrial is not called for where the reversal is with directions to enter judgment for the appellant. (6 Witkin, Cal. Procedure (2d ed. 1971), Appeal, § 546, pp. 4487-4488; see, e.g., *England* v. *Christensen* (1966) 243 Cal.App.2d 413, 435 [52 Cal.Rptr. 402].)

In this case, we must determine whether our Supreme Court intended by its decision in *No Oil I* to remand the cause for a new trial within the meaning of section 583, subdivision (c). This determination requires an examination of the opinion in *No Oil I* as a whole. (See, e.g., *Fannin Corp.* v. *Superior Court* (1974) 36 Cal.App.3d 745, 753 [111 Cal.Rptr. 920]; *Stromer* v. *Browning, supra,* 268 Cal.App.2d at p. 519.)

■ Our examination of the opinion in *No Oil I* reveals that the Supreme Court reversed the judgment of the trial court with directions to the trial court to enter judgment for the plaintiffs. (13 Cal.3d at p. 88.) Thus, the Supreme Court did not intend to remand the case for a new trial on the merits.

The Supreme Court directed the trial court as follows: "The superior court shall set aside the ordinances establishing the oil drilling districts on the ground that the city, in enacting these ordinances, failed to comply with the provisions of CEQA." (*Ibid.*)

In this case, therefore, upon remand it was the duty of the trial court, which was performed, to enter judgment in conformity with the above order of our Supreme Court. The lower court could not "reopen the case on the facts, allow the filing of amended or supplemental pleadings, nor retry the case. . . ." (*Snoffer* v. *City of Los Angeles* (1936) 14 Cal.App.2d 650, 653 [58 P.2d 961]; see 5 Cal.Jur.3d, Appellate Review, § 589, pp. 305-308.)

■ Despite the directions in *No Oil I* to enter judgment for plaintiffs, the defendants argue "that so long as there has been a trial, a reversal and

---

[3]However, "[s]ubdivision (c) of section 583 specifies that the three-year limitation placed upon bringing an action to trial after the filing of remittitur following reversal on appeal and remand for a new trial shall not require the dismissal of an action prior to the expiration of the overall five-year period from the date of the original filing of the action as provided in subdivision (b). [Fn. omitted.]" (*Bergin* v. *Portman* (1983) 141 Cal.App.3d 23, 26 [190 Cal.Rptr. 81].)

remand, *all issues* remaining to be tried after the remand must be tried before three years have expired from the filing of the remittitur in the Superior Court." Defendants claim that the plaintiffs' request for attorneys' fees is such an issue.

■ Defendants' argument fails, however, to distinguish between two separate and distinct situations where an award of attorney's fees may be made. One is where attorney's fees are authorized solely by statute and hence are not part of the cause of action. (See, e.g., *Folsom* v. *Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 678 [186 Cal.Rptr. 589, 652 P.2d 437].) The other situation is where attorney's fees are part of the relief sought and hence must be pleaded and proven at trial. (*Id.,* at p. 678, fn. 16, citing *Mabee* v. *Nurseryland Garden Centers, Inc.* (1979) 88 Cal.App.3d 420, 425 [152 Cal.Rptr. 31].)

The *Mabee* court explained: "For example, where attorney fees are incurred in a prior action, or sought in a proceeding as damages—as for example in false imprisonment or malicious prosecution suits—or where recovery is sought in an action by an attorney against his client for an agreed or a reasonable fee, then the claim for attorney fees is part of the damage sought in the principal action. Only in such circumstance would the attorney fee be required to be pleaded and proven—as any other item of damages— at trial. *No similar procedural and evidentiary base is required where 'the attorney fee was not the cause of action but an incident to it.'*" (*Id.,* at p. 425.) (Italics added.)

■ In this case, plaintiffs' claim for attorney's fees is based on the "private attorney general" concept which permits an award of attorney fees "to those who by litigation secure benefits for a broad class of persons by effectuating a strong public policy." (*Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 505 [198 Cal.Rptr. 551, 674 P.2d 253], citing *Serrano* v. *Priest* (1977) 20 Cal.3d 25, 42-47 [141 Cal.Rptr. 315, 569 P.2d 1303].)

The private attorney general doctrine is one of several exceptions to the general rule that each party must pay his own attorney fees. (*Gray, supra,* 35 Cal.3d at p. 505; see also section 1021.)[4] This exception was created by the courts pursuant to their inherent equitable powers. Later, it was given statutory recognition under section 1021.5, which became effective on January 1, 1978, and applies to all pending cases. (*Kievlan* v. *Dahlberg Electronic, Inc.* (1978) 78 Cal.App.3d 951, 959 [144 Cal.Rptr. 585].)

---

[4]Section 1021 provides in part: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ."

■ ". . . . Section 1021.5 does not create a new cause of action; it is ancillary to the underlying cause." (*Ibid.*) It is a special motion procedure plainly intended to be initiated after the result of the action is known but subject "to no express time limit." (*Marini* v. *Municipal Court* (1979) 99 Cal.App.3d 829, 834 [160 Cal.Rptr. 465].) Such a motion *"need not* be made and determined until after the judgment is final." (*Id.,* at p. 835.) (Italics in original.)

■ As explained by the *Marini* court: "[I]t is well established that despite 'finality' a trial court can set aside a wholly void judgment, correct clerical errors in the judgment, modify certain kinds of judgments, exercise powers which it has expressly reserved, rule upon a pending motion to tax costs, make any of a variety of orders in enforcement of the judgment, and, in general, deal with and dispose of matters which can be classified as 'ancillary and collateral' to the judgment. *Applications for attorney fees, and proceeding upon such applications, have been treated as 'ancillary and collateral' matters in this sense."* (*Id.,* at p. 834; italics added.) Hence, to allow the trial court to dismiss "all further proceedings" in the case at bench, under section 583, subdivision (c), would deprive the trial court of jurisdiction to handle any matter which can be classified as "ancillary and collateral" to the judgment.

■ Thus, we conclude that section 583, subdivision (c), by its very terms and purposes, does not apply to matters which are "ancillary and collateral" to the judgment, and hence does not apply to an application for attorney fees under section 1021.5.

Next, defendants argue that if section 583, subdivision (c), does not apply, the action of the trial court in dismissing "all further proceedings" in the case should be upheld either under the doctrine of laches, or under the inherent power to dismiss stale claims.

Defendants have not cited any authority in support of their argument, and our research has revealed none. (Cf., *Blue Chip Enterprises, Inc.* v. *Brentwood Sav. & Loan Assn.* (1977) 71 Cal.App.3d 706, 712-713 [139 Cal.Rptr. 651].) The record in this case shows that the trial court dismissed "all further proceedings" in the case exclusively on the basis of section 583, subdivision (c), "without reference to any 'independent basis' for the ruling. [Fn. omitted.]" (*Bergin* v. *Portman, supra,* 141 Cal.App.3d at pp. 27-28.) We conclude, therefore, that the defendants' claims of laches, and the inherent power of the trial court to control its calendar, can be best raised if and when the plaintiffs reset their motion for attorneys' fees before the trial court.

Accordingly, the order dismissing all further proceedings in the case is reversed.

Johnson, Acting P. J., and Merrick, J.,* concurred.

Respondents' petitions for a hearing by the Supreme Court were denied May 24, 1984. Mosk, J., was of the opinion that the petitions should be granted.

*Assigned by the Chairperson of the Judicial Council.